# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRAULLO LOPEZ-GUTIERREZ,**<br><br>**Petitioner,**<br><br>v.<br><br>**J.L. JAMISON, et al.,**<br><br>**Respondents.** | **CIVIL ACTION NO. 26-3828** |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                    **June 8, 2026**

Petitioner Braullo Lopez-Gutierrez is one of countless individuals whom the government

has subjected to mandatory detention based on its newfound interpretation of 8 U.S.C. § 1225 of

the Immigration and Nationality Act ("INA"). Lopez-Gutierrez now brings a petition for habeas

corpus pursuant to 28 U.S.C. § 2241, challenging his continued detention without a bond

hearing. Lopez-Gutierrez argues his detention is based upon an unlawful interpretation of §

1225, violates the APA, and violates procedural and substantive due process.[1] Due to Mr. Lopez-

Gutierrez's longstanding presence in the United States, the government lacked authority to

mandatorily detain him under 8 U.S.C. § 1225(b)(2). Consistent with the reasoning of hundreds

of other rulings in this district,[2] the Court will grant the petition and order Mr. Lopez-Gutierrez's

immediate release.

---

[1] Pet. [Doc. No. 1].

[2] *See, e.g., Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (noting that, as of November 18, 2025, 282 of 288 district court decisions had found that the application of § 1225(b)(2) to noncitizens residing in the United States is unlawful); *Cantu-Cortes v. O'Neill*, No. 25-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025)*; Kashranov v. Jamison*, No. 25-5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025)*; Ndiaye v. Jamison*, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025)*; Patel v. McShane*, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); *Centeno Ibarra v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6312, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025)*; Flores Obando v. Bondi*, No. 25-6474, 2025 WL 3452047 (E.D. Pa. Dec. 1, 2025); *Yilmaz v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6572, 2025 WL 3459484 (E.D. Pa. Dec. 2, 2025);

## I.    BACKGROUND

Mr. Lopez-Gutierrez is a citizen of Honduras who entered the United States with his infant son without inspection in or around February 2019.[3] Shortly after entering the United States, he was encountered by officers from the Department of Homeland Security ("DHS").[4] DHS detained and processed Mr. Lopez-Gutierrez, initiated removal proceedings, and released him to live in Philadelphia.[5]

Mr. Lopez-Gutierrez lived in Philadelphia with his son, and he complied with all conditions of his removal proceedings and immigration release, including regular check-ins and hearings with Immigration and Customs Enforcement ("ICE").[6] Petitioner defensively applied for asylum during removal proceedings. Following negotiation and pursuant to an agreement between Petitioner's then-counsel and the government, an immigration judge dismissed Mr. Lopez-Gutierrez's removal proceedings on May 31, 2023.[7]

On May 31, 2026, DHS officials detained Mr. Lopez-Gutierrez, asked him about another individual they were looking for, and then took Mr. Lopez-Gutierrez into custody.[8] He was

---

*Conde v. Jamison*, No. 25-6551, 2025 WL 3499256 (E.D. Pa. Dec. 5, 2025); *Bhatia v. O'Neill*, No. 25-6809, 2025 WL 3530075 (E.D. Pa. Dec. 9, 2025); *Anirudh v. McShane*, No. 25-6458, 2025 WL 3527528 (E.D. Pa. Dec. 9, 2025); *Picon v. O'Neill*, No. 25-6731, 2025 WL 3634212 (E.D. Pa. Dec. 15, 2025). Since then, numerous additional decisions have ruled against the government. *See, e.g.*, *Kanaut v. Rose*, No. 25-6869, 2026 WL 36690 (E.D. Pa. Jan. 6, 2026); *Francois v. Noem*, No. 25-7334, 2026 WL 27565 (E.D. Pa. Jan. 5, 2026); *Lara Cordon v. Jamison*, No. 25-6937, 2025 WL 3756948 (E.D. Pa. Dec. 29, 2025); *Kumar v. McShane*, No. 25-6238, 2025 WL 3722005 (E.D. Pa. Dec. 23, 2025); *Alekseev v. Warden, Phila. Fed. Det. Ctr.*, No. 26-0462, 2026 WL 413439, at *1 (E.D. Pa. Feb. 13, 2026) (identifying that all 201 decisions in this District have rejected the government's position). Among this District's most recent decisions are *Contreras Guerrero v. Jamison*, No. 26-3237, 2026 WL 1383407 (E.D. Pa. May 18, 2026); *Rojas Lara v. Jamison*, No. 26-3183, 2026 WL 1383309 (E.D. Pa. May 18, 2026); and *Holovinov v. Jamison*, No. 26-3241, 2026 WL 1365009 (E.D. Pa. May 15, 2026).

[3] Pet. ¶ 17 [Doc. No. 1].

[4] *Id*. ¶ 18.

[5] *Id*.

[6] *Id*. ¶¶ 19-20.

[7] *Id*. ¶ 20.

[8] *Id*. ¶ 21.

initially detained at the Federal Detention Center in Philadelphia.[9] On June 3, 2026, the same day

that Petitioner filed the instant petition, he was transferred to Moshannon Valley Processing

Center.[10] The parties agree that jurisdiction remains with this Court. Mr. Lopez-Gutierrez's

detention results from Respondents' revised interpretation of § 1225(b)(2).[11] Diverting course

from longstanding agency practice, Respondents now argue that individuals who have been long-

present in the United States without lawful status are "applicant[s] for admission" and subject to

mandatory detention without a bond hearing.[12]

On June 3, 2026, Mr. Lopez-Gutierrez filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2241.[13] Consistent with its established practice for recent cases involving

individuals detained by ICE under § 1225, the Court ordered Respondents to show cause why the

petition should not be granted and scheduled a hearing on the matter.[14] After a status telephone

call with counsel on the matter, the Court now considers the Petition. The parties earlier

submitted a stipulation that the Court should decide this matter on the pleadings. It does so now.

## II.    LEGAL STANDARD

Federal district courts are authorized to grant a § 2241 petition when the petitioner is

detained "in violation of the Constitution or laws or treaties of the United States."[15] It is

Petitioner's burden to show that his detention violates the Constitution or federal law.[16]

---

[9] *Id.* ¶ 22.

[10] Opp'n at 5 n.4 [Doc. No. 6].

[11] Pet. ¶ 23 [Doc. No. 1].

[12] *See* Opp'n at 3 [Doc. No. 6]; 8 U.S.C. § 1225(b)(2)(A).

[13] Pet. [Doc. No. 1].

[14] 6/4/26 Order [Doc. No. 2].

[15] 28 U.S.C. § 2241(c)(3).

[16] *See Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

### III.   DISCUSSION

The decisive issue is whether mandatory detention provided for in § 1225(b)(2)(A) extends to noncitizens who, despite not being admitted or paroled, have established their presence in the United States.[17] As Respondents note, courts in this District have confronted this issue repeatedly and exhaustively.[18] Courts in this District have overwhelmingly rejected the government's position, holding that § 1225(b)(2) does not apply to noncitizens who are firmly established in the country.[19] Still, "[t]his Court considers each case on an *ad hoc* basis, and its rulings turn on the facts of each case at issue."[20]

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is clearly and beyond a doubt entitled to be admitted, the alien shall be detained. . . ."[21] Noncitizens like Petitioner have traditionally been detained, if at all, under 8 U.S.C. § 1226, which provides a bond hearing to noncitizens.[22] Respondents ask this Court to diverge from its past interpretation of § 1225 and § 1226 based on decisions from the Fifth and Eighth Circuits, which held that

---

[17] Respondents do not contest whether this Court has jurisdiction to review Petitioner's petition. In any event, the Court has jurisdiction, as the various INA jurisdiction-stripping statutes, *see, e.g.*, 8 U.S.C. § 1252(g); 8 U.S.C. § 1252(a)(2)(B)(ii); 8 U.S.C. § 1252(b)(9), do not apply. *See Yilmaz*, 2025 WL 3459484, at *2 (concluding that the jurisdiction-stripping statutes are not germane because the petitioner "challenges his detention rather than the initiation of removal proceedings, because [the petitioner] cannot obtain relief for his detention following a final order regarding removal, and because [the petitioner's] detention is not the byproduct of a discretionary determination").

[18] *See* Opp'n at 2 [Doc. No. 4].

[19] *See supra* n.2.

[20] *Diallo v. Bondi*, No. 25-7421, 2026 WL 36534, at *2 (E.D. Pa. Jan. 6, 2026).

[21] 8 U.S.C. § 1225(b)(2)(A).

[22] 8 U.S.C. § 1226.

"seeking admission" was not a separate requirement from the condition be an "applicant for admission."[23]

The Court need not defer to, and indeed rejects, the reasoning of *Buenrostro-Mendez v. Bondi* and *Avila v. Bondi*. The term "seeking admission," by its plain meaning, connotes present, ongoing action.[24] "Because some affirmative, present action is required, this phrase cannot apply to all noncitizens already residing in the United States."[25] An "applicant for admission" who is "seeking admission" must therefore be a noncitizen at a port of entry seeking to cross into the United States.[26] Respondents' reading would render the term "seeking admission" entirely superfluous.[27] Their reading would also clash with past agency practice and the canon of constitutional avoidance.[28] Thus, the detention of noncitizens in situations like Mr. Lopez-Gutierrez's is governed not by § 1225, but by § 1226(a) and corresponding regulations, which entitle noncitizens to a bond hearing.[29]

---

[23] *Buenrostro-Mendez v. Bondi,* 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi,* No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026). *See also* Opp'n at 3, 5-6 [Doc. No. 4].

[24] *See Kashranov*, 2025 WL 3188399, at *6 (" '[S]eeking admission' describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization.").

[25] *Centeno Ibarra*, 2025 WL 3294726, at *5.

[26] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *5.

[27] *See Ndiaye*, 2025 WL 3229307, at *5 (determining that since Congress's " 'choice of words is presumed to be deliberate and deserving of judicial respect,' this Court must give meaning to the words 'an alien seeking admission.' " (quoting *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 364 (2018)).

[28] *See id.* at *6 (noting that, since 1997, the DHS had applied § 1226(a) to inadmissible noncitizens residing in the United States); *id.* at *7 (an interpretation of § 1225 allowing for the mandatory detention of noncitizens who have long been present in the country would implicate constitutional questions of due process).

[29] *See Yilmaz*, 2025 WL 3459484, at *3; *see also Centeno Ibarra*, 2025 WL 3294726, at *4-7; 8 C.F.R. § 1236.1(c)(8), (d)(1) (stating that bond is available to noncitizens detained under § 1226(a) and that "the immigration judge is authorized to exercise the authority . . . to detain the [noncitizen] in custody, release the [noncitizen], and determine the amount of bond"); *Jorge-Peralta v. Jamison*, No. 26-1775, 2026 WL 1047057, at *4 (E.D. Pa. Apr. 17, 2026) ("[Petitioner's] detention is instead governed by § 1226 because he is a '[noncitizen] already present in the United States.' " (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)).s

Congress's adoption of the Laken Riley Act, which is an amendment to § 1226, highlights this. Congress enacted provisions demanding that a noncitizen be detained without a bond hearing if he enters the country illegally and is convicted or charged with severe crimes.[30] This amendment would be meaningless if, as Respondents suggest, § 1225 authorized detentions without a bond hearing irrespective of criminal activity. Other provisions of § 1226 that reserve mandatory detention for when a noncitizen engages in criminal conduct would likewise be superfluous on Respondents' reading.[31] Recent decisions in the Second, Sixth, and Eleventh Circuits that concluded noncitizens like Petitioner are not subject to mandatory detention confirm these conclusions.[32]

Mr. Lopez-Gutierrez may be detained under the INA only if he receives a bond hearing, pursuant to § 1226 and applicable regulations, and the facts show that he poses a flight risk or danger to the community.[33] Respondents do not contend that Petitioner poses such a risk, and there is no evidence in the record that supports such a contention. Petitioner has been peacefully living in the United States raising his son, has no criminal record, and has valid employment authorization. For these reasons, a bond hearing is unnecessary, and the Court will order Petitioner's immediate release.[34]

---

[30] Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025); 8 U.S.C. § 1226(c)(1)(E).

[31] *See, e.g.*, 8 U.S.C. § 1226(c)(1)(B) (requiring a noncitizen who is deportable because of criminal convictions to be detained).

[32] *See Barbosa da Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044 (2d Cir. Apr. 28, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395 (11th Cir. May 6, 2026); *Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891 (6th Cir. May 11, 2026).

[33] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *4, *8 n.69; 8 C.F.R. § 1236.1(c)(8), (d)(1).

[34] *See Karshranov*, 2025 WL 3188399, at *8 ("[A] habeas court has 'the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted.'" (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008))).

6

Because Mr. Lopez-Gutierrez's detention without a bond hearing violates the INA, the Court need not reach his APA and due process arguments.

**IV.    CONCLUSION**

For the foregoing reasons, Respondents lacked authority to mandatorily detain Mr. Lopez-Gutierrez without a bond hearing under 8 U.S.C. § 1225(b)(2)(A). The Court will grant his petition and issue a writ of habeas corpus. An appropriate order will be entered.